UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24386-CIV-ALTONAGA/Reid

**ERNESTO D. SANZ**, *et al.*,

    Plaintiffs,
v.

**NEWREZ LLC**; *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Newrez LLC ("Shellpoint") and Deutsche Bank National Trust Company's ("Deutsche Bank['s]") Motion to Dismiss [ECF No. 19], filed on January 6, 2025. Plaintiffs, Ernesto D. Sanz and Jaqueline M. Seleme, filed a Response [ECF No. 25]; to which Defendants filed a Reply [ECF No. 26]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

This case arises from a dispute over lender-placed flood insurance on Plaintiffs' property and the resulting charges added to their loan balance. (*See generally* Compl. [ECF No. 1]). On August 3, 2004, Plaintiffs obtained a 10-year, $150,000 Home Equity Line of Credit ("HELOC") from E-Loan, secured by a mortgage on their property in Palmetto Bay, Florida. (*See id.* ¶¶ 14, 20). A HELOC allows flexible borrowing until its draw period ends, after which no further withdrawals are permitted, and the balance must be repaid on a fixed schedule; the mortgage securing the HELOC remains in place until the debt is fully satisfied. (*See id.* ¶¶ 20–21).

Under the HELOC's terms, if Plaintiffs were required to maintain flood insurance, as

determined by the lender (E-Loan's successor, Deutsche Bank) or the servicer (Shellpoint), and failed to do so, the lender or servicer could secure coverage on their behalf and charge them for it. (*See id.* ¶¶ 15, 20–21; *id.*, Ex. 1, HELOC 28[1] ¶ 4 ("If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the [p]roperty[,]" and further, "[you] agree that the premium for any such insurance may be higher than the premium you would pay for such insurance." (alterations added)));[2] *see also Whitfield v. Selene Fin. LP*, No. 24-cv-00153, 2024 WL 4933329, at *9 (M.D. Ga. Dec. 2, 2024) (concluding that loan servicers, as assignees of the lender's servicing rights, can enforce provisions in a mortgage (citation omitted)).

After the HELOC's draw period ended on September 14, 2014, Plaintiffs continued making payments, reducing the balance to under $19,000 by 2023, while the mortgage remained an active lien on the property. (*See* Compl. ¶ 20). Plaintiffs insist that for over 20 years, they were never informed of any flood insurance requirement. (*See id.* ¶¶ 22–23). It was not until Plaintiffs received a September 25, 2023 letter from Shellpoint — which had been servicing the mortgage since March 2020 — that they were told their property was in a Special Flood Hazard Area and required flood insurance under federal law. (*See id.* ¶¶ 20, 22–23). The letter claimed to be the second notice, stating that a previous one had been sent a month earlier. (*See id.* ¶ 22).

In another letter dated October 11, 2023, Shellpoint informed Plaintiffs that it had already procured lender-placed flood insurance on the couple's behalf — retroactively covering the period

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] Defendants argue that the HELOC itself requires Plaintiffs to obtain flood insurance. (*See* Mot. 2 (citing HELOC ¶ 4)). Plaintiffs dispute this interpretation. (*See* Compl. ¶¶ 23, 29). An issue "of contract interpretation is not appropriately engaged under a motion to dismiss[,]" *Anderson v. Branch Banking & Tr. Co.*, 56 F. Supp. 3d 1345, 1354 n.7 (S.D. Fla. 2014) (alteration added; citations omitted).

2

from March 1, 2020 to March 1, 2024 — at an annual premium of $2,308.88. (*See id.* ¶ 23). When Plaintiffs requested a HELOC payoff statement in December 2023, they anticipated a remaining balance of around $18,500; instead, Plaintiffs were confronted with an additional $8,699.61 charge — an amount they attribute to the lender-placed policy. (*See id.* ¶¶ 24, 26). The following month, in January 2024, Shellpoint created an escrow account, making Plaintiffs appear delinquent despite a history of timely payments on the HELOC. (*See id.* ¶¶ 22, 24).

In a letter dated January 31, 2024, Plaintiffs' counsel delivered a Qualified Written Request Dispute ("QWR") to Shellpoint, contesting the retroactive flood-insurance charge. (*See id.* ¶ 29). Shellpoint acknowledged receipt of the QWR but did not respond to its substance. (*See id.* ¶ 30).

On November 7, 2024, Plaintiffs filed their Complaint, asserting eight claims: two for violations of the National Flood Insurance Act ("NFIA"), 42 U.S.C. section 4001 *et seq.*, against both Defendants (Counts I and II) (*see* Compl. ¶¶ 33–46); two for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. section 2601 *et seq.*, and the statute's implementing regulation, 12 C.F.R. section 1024, against Shellpoint (Counts III[3] and IV) (*see* Compl. ¶¶ 47–63); two for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. section 1692 *et seq.*, against Shellpoint (Counts V and VI) (*see* Compl. ¶¶ 64–77); one for a violation of Section 559.72, Florida Statutes — part of the Florida Consumer Collection Practices Act (FCCPA) — against Shellpoint (Count VII) (*see* Compl. ¶¶ 78–84); and one for a violation of Section 701.04, Florida Statutes, against Shellpoint (Count VIII) (*see* Compl. ¶¶ 85–89).

Defendants ask the Court to dismiss the Complaint in its entirety. (*See generally* Mot.). In response to Defendants' arguments, Plaintiffs acknowledge that the NFIA — under which

---

[3] In Count III, Plaintiffs also assert a violation of 12 C.F.R. section 1026.36(c), a regulation implementing the Truth in Lending Act ("TILA"), 15 U.S.C. section 1601 *et seq.* (*See* Compl. ¶¶ 48, 51). This portion of the claim is not addressed here, as Defendants are not moving to dismiss it. (*See generally* Mot.; Reply).

Plaintiffs bring Counts I and II — does not confer a private cause of action.[4] (*See* Resp. 8). Plaintiffs, therefore, seek leave to amend to assert additional claims premised on the same factual allegations. (*See id.*). Likewise, Plaintiffs concede that they fail to plead a necessary element in Counts V and VI but assert that this flaw can be remedied with new evidence they have acquired and, as a result, again request leave to amend. (*See id.* 13–14). That is where the agreement ends: Plaintiffs insist the remaining claims survive dismissal. (*See generally id.*).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the

---

[4] Although Plaintiffs acknowledge the general rule that the NFIA does not provide a private cause of action, *see Callahan v. Countrywide Home Loans, Inc.*, No. 06-cv-105, 2006 WL 1776747, at *2 (N.D. Fla. June 26, 2006) (citation omitted), they contend that the unique facts of this case justify an exception (*see* Resp. 8). The Court declines the invitation to create such exception. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

4

defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff[s]" and take its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted; alteration added).

### III.   DISCUSSION

In addition to the previously acknowledged issues in Counts I, II, V, and VI, Defendants contend that Plaintiffs fail to state a claim for relief in Counts III, IV, VII, and VIII;[5] Plaintiffs, unsurprisingly, disagree with each of these assertions. (*See generally* Mot.; Resp.; Reply).

#### A.   **Counts III and IV (RESPA violations)**

In Counts III and IV, Plaintiffs allege that Shellpoint flouted its RESPA obligations by failing to timely respond to their QWR, investigate their claim, and follow proper error resolution procedures — entitling Plaintiffs to actual and statutory damages under 12 U.S.C. section 2605(f). (*See* Compl. ¶¶ 47–63); *see also* 16 C.F.R. § 1024.35. Shellpoint argues that these claims should be dismissed due to Plaintiffs' failure to adequately plead damages. (*See* Mot. 8–10). It is true that, to state a claim under the RESPA, Plaintiffs must do more than plead a statutory violation; they must also allege actual or statutory damages. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245–48 (11th Cir. 2016) (citing 12 U.S.C. § 2605(f)(1); other citations omitted).

---

[5] Defendants also assert broadly that all of Plaintiffs' claims fail as a matter of law, arguing that federal law and the HELOC mandate flood insurance and permit retroactive force-placed insurance. (*See* Mot. 4–6). According to Plaintiffs, Shellpoint ignored the NFIA's 45-day notice requirement, and no prior servicer had ever required flood insurance on their property, making Shellpoint's sudden enforcement both improper and unprecedented. (*See* Resp. 4–6). Defendants fail to address these arguments in their Reply; in any event, these issues involve factual disputes that are inappropriate for resolution at this stage, *see Anderson*, 56 F. Supp. 3d at 1354 n.7 (citations omitted).

Given this, the Court will first evaluate whether Plaintiffs have sufficiently pleaded the underlying statutory violations before addressing the damages allegations.

      *i. Statutory Violation*

In Count III, Plaintiffs allege that Shellpoint violated 12 C.F.R. section 1024.35 — a RESPA-implementing regulation — by failing to adequately address their QWR disputing nearly $9,000 in lender-placed flood insurance charges. (*See* Compl. ¶¶ 48–50). This provision requires mortgage servicers to investigate and respond to written error notices from borrowers within 30 business days, either by correcting the error or providing a detailed, written explanation if no error occurred. *See* 12 C.F.R. §§ 1024.35(a), (e). Plaintiffs allege that Shellpoint did neither — instead, it imposed unlawful charges, ignored Plaintiffs' QWR, evaded accountability through unjustified delays, and ultimately cut communication altogether. (*See* Compl. ¶¶ 48–50).

Plaintiffs' allegations, no matter how compelling, cannot state a claim: "While [12 U.S.C. section] 2605 generally provides a private right of action for RESPA violations, 12 C.F.R. [section] 1024.35 does not." *Willson v. Bank of Am., N.A.*, No. 15-cv-14303, 2016 WL 8793204, at *8 (S.D. Fla. May 2, 2016) (alterations added); *see also Thompson v. Kerr*, 555 F. Supp. 1090, 1097 n.8 (S.D. Ohio 1982) (noting that "it is proper to raise *sua sponte* the issue of the lack of a private right of action, even if same has not been raised by the parties" (collecting cases)). "Other sections promulgated under [the] RESPA . . . explicitly provide a private cause of action by referring to remedies under [section] 2605(f)." *Id.* (alterations added; citing 12 C.F.R. § 1024.41(a)); *see also Miller v. HSBC Bank U.S.A., N.A.*, No. 13-7500-Civ, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) ("Because [s]ection 1024.35 includes the remedies available, and because a private right of action for alleged damages is not among them, [plaintiff's] notice of error claim is rejected." (alterations added; citation omitted)). Yet, 12 C.F.R. section 1024.35

"makes no such reference and therefore does not provide a private right of action." *Willson*, 2016 WL 8793204, at \*8 (citation omitted). The proper avenue for a borrower to bring a claim for a servicer's failure to properly address a notice of errors or similar violations is through 12 U.S.C. section 2605(e). *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016).

That is precisely what Plaintiffs allege in Count IV: they claim Shellpoint violated 12 U.S.C. section 2605(e) by failing to adequately respond to their QWR. (*See* Compl. ¶¶ 52–63). Under this provision, when a mortgage servicer "receives a qualified written request from [a] borrower[,]" the servicer must "provide a written response acknowledging receipt of the correspondence within [five] days." 12 U.S.C. § 2605(e)(1)(A) (alterations added). The servicer must then offer a substantive response within 30 business days after receiving the QWR — either correcting the borrower's account, providing the borrower with a written explanation stating why the account information is correct, or providing the borrower with a written explanation indicating that the information requested is unavailable. *See* 12 U.S.C. § 2605(e)(2).

Plaintiffs contend Shellpoint acknowledged receipt of their QWR but failed to investigate their claim, credit Plaintiffs' escrow account, or offer a justification for the force-placed flood insurance or its necessity. (*See* Compl. ¶¶ 54–55). Instead of correcting the disputed charges or providing the explanation required under section 2605(e)(2), Shellpoint delayed indefinitely, asserting it had not resolved the issue due to the "complex nature of the matter[.]" (*Id.* ¶ 59 (alteration added)). In their Motion, Defendants do not appear to contest that a RESPA violation occurred, but instead argue Plaintiffs fail to plead actual or statutory damages. (*See* Mot. 9–10).

    ii. *Actual Damages*

To state a claim under the RESPA, a plaintiff must allege facts showing he suffered actual damages or is entitled to statutory damages. *See Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833,

836 (11th Cir. 2010). If a mortgage servicer fails to comply with the requirements of 12 U.S.C. section 2605, a borrower may be entitled to any actual damages sustained "as a result of the failure[.]" *Id.* § 2605(f)(1) (alteration added). Plaintiffs allege that Shellpoint's inaction inflicted financial harm, compelling them to pay inflated escrow charges and other unwarranted costs. (*See* Compl. ¶ 61; Resp. 9). Shellpoint, however, insists that these charges predate the QWR and therefore cannot support a RESPA claim due to lack of causation. (*See* Mot. 9–10).

To support their claim, Plaintiffs allege a long string of damages attributable to Shellpoint's activities. (*See* Compl. ¶ 61). First, they assert that Shellpoint unlawfully imposed $8,699.61 in force-placed flood insurance premiums, including $6,390.93 in retroactive charges (2020–2023) and $2,308.68 for coverage from November 2023 to February 2024. (*See id.*). They also claim that Shellpoint failed to credit their escrow account after Plaintiffs purchased their own flood insurance for $1,600 and began wrongfully requesting monthly payments of $341.23 to pay down the purported debt on the escrow account. (*See id.*). The monthly payments had already exceeded $3,000 by the time Plaintiffs filed this action in November 2024. (*See id.*).

Plaintiffs further allege that these inflated charges wrongfully increased their HELOC payoff, preventing them from closing their loan and leading to continued payments on accrued interest. (*See id.*). Finally, Plaintiffs insist that Shellpoint's actions resulted in "emotional anxiety and mental stress[,]" while also saddling them with $3,000 in attorney's fees. (*Id.* (alteration added)).

Crucially, the RESPA requires a causal link between the alleged violation and the claimed damages. *See Renfroe*, 822 F.3d at 1246 (citation omitted). As Shellpoint details, Plaintiffs received their first notice explaining the insurance requirement in September 2023, coverage was placed in October 2023, and the disputed charges appeared in a January 2, 2024 payoff statement

8

— nearly a month before the January 31, 2024 QWR. (*See* Mot. 9 (citations omitted)).

Nevertheless, Plaintiffs adequately plead damages — both economic and non-economic — arising from Shellpoint's failure to comply with 12 U.S.C. section 2605(e). Two examples will suffice. First, Plaintiffs allege emotional distress stemming from Shellpoint's "failure . . . to timely acknowledge the false charge" on the escrow account. (Compl. ¶ 61 (alteration added)). Courts have long recognized non-economic damages, such as "mental anguish[,]" as compensable under the RESPA when tied to a statutory violation. *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1166 (M.D. Ala. 1999) (alteration added); *see also McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (interpreting the phrase "actual damages" to mean that all plaintiffs "arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under [the] RESPA" (alteration added; citation omitted)). Second, Plaintiffs claim attorney's fees incurred due to Shellpoint's insufficient response to the QWR (*see* Compl. ¶ 61), which are recoverable under the RESPA, *see Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (finding that "reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under [the] RESPA" (alteration added; citations omitted)).

Thus, Plaintiffs sufficiently plead actual damages under 12 U.S.C. section 2605(e), making dismissal inappropriate and rendering any analysis of statutory damages unnecessary.

**B. Count VII (Fla. Stat. § 559.72)**

Under Florida law, debt collectors may not attempt to enforce a debt when they know it is not legitimate. *See* Fla. Stat. § 559.72(9). Defendants argue that the flood insurance charges were authorized under the HELOC and federal law, making them legally enforceable and negating any claim that Shellpoint knowingly pursued an invalid debt. (*See* Mot. 12–13). Plaintiffs

dispute the charges' legitimacy and maintain that they and their counsel put Defendants on notice — yet collection efforts persisted.  (*See* Compl. ¶¶ 78–84; Resp. 14–15).

To state a claim under Section 559.72(9), Florida Statutes, a plaintiff must allege that: (1) the defendant claimed, attempted, or threatened to enforce a debt, and (2) the defendant knew the debt was not legitimate or asserted a legal right it knew did not exist.  *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000) (citing Fla. Stat. § 559.72(9)); *see also Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) (citation omitted).  Plaintiffs allege that Shellpoint attempted to collect improper insurance charges and knew the debt was not legitimate because Plaintiffs and their counsel repeatedly placed them on notice.  (*See* Compl. ¶¶ 78–84).

Contrary to Defendants' position, the legitimacy of the debt itself is a factual dispute that cannot be resolved on a motion to dismiss.  *Timberlake v. Robertson, Anschutz & Schneid, P.L.*, No. 19-cv-3167, 2020 WL 2039722, at *2 (M.D. Fla. Apr. 28, 2020) ("Whether the debt at issue here was legitimately owed is likely to be the dispositive issue in this case, but it is premature to make that determination on a motion to dismiss.").  Moreover, Plaintiffs plainly assert that Defendants had actual knowledge of the debt's illegitimacy through their communications.  (*See* Compl. ¶ 84).  Taking these allegations as true, Plaintiffs state a claim under Section 559.72(9).

C. **Count VIII (Fla. Stat. § 701.04)**

Under Florida law, lenders must, within 10 days of a written request, send an estoppel letter setting forth the unpaid balance of a loan secured by a mortgage, including an itemization of principal, interest, and any other charges "*properly due*[.]"  Fla. Stat. § 701.04(e) (alteration and emphasis added); *see also id.* §§ 701.04(1)(a)–(b).  Defendants argue that Plaintiffs fail to plausibly allege any inaccuracy in Shellpoint's January 2, 2024 payoff statement, insisting that the flood insurance charges were lawfully imposed under the HELOC and federal law.  (*See* Mot. 13–

10

14; Reply 3–4). Defendants also contend Plaintiffs do not adequately plead harm from the alleged misstatement, as Plaintiffs do not claim they intended to pay off the HELOC but were impeded by the disputed charges. (*See* Mot. 14). Plaintiffs allege that Shellpoint inflated the payoff amount by including improperly assessed, retroactive flood insurance charges that were neither disclosed nor justified, increasing the amount necessary to satisfy the loan and obstructing their ability to do so. (*See* Resp. 3, 16; Compl. ¶¶ 87, 89; *id.*, Ex. 5, Jan. 2, 2024 Letter [ECF No. 1-1] 45–47).

To state a claim under Section 701.04, Florida Statutes, a plaintiff must allege that the lender provided an inaccurate or misleading payoff statement. *See Laptopplaza, Inc. v. Wells Fargo Bank, N.A.*, 276 So. 3d 375, 379 (Fla. 3d DCA 2019) (citing Fla. Stat. § 701.04). Accepting Plaintiffs' allegation that the inflated charges impeded their ability to satisfy the HELOC, whether Shellpoint had the right to impose such charges under the loan's terms and federal law is, again, a factual dispute, not a pleading deficiency. (*See* Reply 4–5); *see also Timberlake*, 2020 WL 2039722, at *2. Further, at this stage, the extent of damages is irrelevant — Plaintiffs need only allege a statutory violation, not prove harm. *See Salcedo v. Wells Fargo Bank, N.A.*, 223 So. 3d 1099, 1105 (Fla. 3d DCA 2017). Plaintiffs, therefore, state a claim under Section 701.04.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, Newrez LLC and Deutsche Bank National Trust Company's Motion to Dismiss **[ECF No. 19]** is **GRANTED in part and DENIED in part**. Counts I, II, V, and VI are dismissed. Count III is dismissed in part, to the extent it alleges a violation of 16 C.F.R. section 1024.35. Because the deadline to amend pleadings expired on January 29, 2025 (*see* Scheduling Order [ECF No. 18] 1), Plaintiffs have until **March 14, 2025** to file an amended complaint.

CASE NO. 24-24386-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 7th day of March, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record